FILED
2014 Sep-08  PM 03:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| AMERICAN INCOME LIFE INSURANCE COMPANY; SCOTT SONNEBERG, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>GOOGLE, INC., )<br><br>Defendant. ) | CASE NO. 2:11-CV-4126-SLB |

## MEMORANDUM OPINION

On May 23, 2012, the Magistrate Judge filed his Report and Recommendation, (doc. 26),[1] recommending that defendant's Motion to Dismiss, (doc. 5), be granted and that all claims against defendant, Google, Inc., be dismissed with prejudice, (doc. 26 at 9). Plaintiffs, American Income Life Insurance Company and Scott Sonneberg, filed Rule 72(b)(2) Objection to, and 28 U.S.C. § 636(b)(1)(A) Motion to Reconsider Magistrate Judge's Recommendation That Motion to Dismiss Be Granted and Magistrate's Order Denying Plaintiffs' Motion to Remand. (Doc. 28.) Based upon the court's consideration of all the materials in its file, the Motion to Reconsider is due to be denied, the Objection is due to be overruled, the Magistrate Judge's Recommendation is accepted, and the Motion to Dismiss will be granted.

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

# I. <u>STATEMENT OF FACTS</u>

The Report and Recommendation contains the following statement of "Facts and Procedural History":

> Plaintiffs American Income Life Insurance Company and Scott Sonnenberg (collectively "plaintiffs") filed this action in the Circuit Court of Jefferson County, Bessemer Division, against Google and "X and Y, fictitious parties operating websites Google, Inc., chooses to reward with prominent placement in all its search engine results, known only to Plaintiff[s] as operators of 'pissedconsumer.com' and 'scam.com.'" (Doc. 1-1 at 6). The substance of plaintiffs' Complaint is that certain business practices by defendants violate the Alabama Deceptive Trade Practices Act, Alabama Code § 8-19-1 *et seq.*, ("ADTPA"). (Id. at 6-11). Specifically, plaintiffs allege:

>> The Fictitious Defendants' banners and content, broadcast via Defendant Google, Inc.'s search engine throughout Alabama, via hundreds of thousands of computer terminals, violates the Alabama Deceptive Trade Practices Act by falsely asserting that "American Income Life is a Scam," and <u>Defendant Google, Inc., has knowingly, since delivery of the 15-Day Alabama Deceptive Trades Practices Act Letter to Defendant Google, Inc., dated July 2, 2011 . . . intentionally disparaged the goods, services, or business of Plaintiff[s] by false and/or misleading representations of fact prohibited by Code of Ala., § 8-19-5(8) and (20)</u>.

> (*Id.* at 9 ¶ 13)(emphasis added). Plaintiffs further allege that Google "touts its patented 'Page Rank' algorithm (also called a 'Black Box algorithm') to analyze which sites are the 'best sources of information across the web' for its seller-assisted marketing plan" and that this algorithm has "afforded prominent placement in its search engine broadcasting to the Fictitious Defendants, as part of the seller-assisted marketing place of Defendants, for several years." (*Id.* at 8-9 ¶¶ 11-12). Plaintiffs seek monetary damages under ADTPA and to enjoin Google from doing business in the State of Alabama until its alleged violations of ADTPA cease. (*Id.* at 10-11).

> Google timely removed the case to this court on December 7, 2011, premised upon diversity jurisdiction, 28 U.S.C. § 1441(a). (Doc. 1). Plaintiffs moved to remand the action, which this court denied. (Docs. 13 & 20).

Relevant at this stage of the litigation, fictitious party pleading is generally not permitted in federal court, and plaintiffs have made no showing that any limited exception might apply here. *See, e.g.*, *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010)("As a general matter, fictitious-party pleading is not permitted in federal court."); *CSX Transp., Inc. v. United Transp. Union*, 2007 WL 1643172, *1 n.1 (11th Cir. June 7, 2007)("the Federal Rules do not authorize suit against fictitious parties").

(Doc. 26 at 1-3 [emphasis in original].)

Although plaintiffs object that the factual allegations of their Complaint were not viewed in the light most favorable to them, (*see* doc. 28 at 7), they have not objected to any specific fact set forth in the Report and Recommendation that was not viewed in their favor. The court has reviewed the plaintiffs' Complaint and finds that the facts set forth in the Report and Recommendation summarize appropriately the facts stated in the Complaint. For purposes of the court's ruling on plaintiffs' Objections and Motion to Reconsider the court **ACCEPTS** the Magistrate Judge's statement of the Facts and Procedural History.

In addition, the court notes the following additional facts are relevant to this court's review:

1. The Complaint alleges that Sonneberg, "the Alabama State General Agent for Plaintiff American Income Life Insurance Company," is a "'consumer' . . . of Defendant Google, Inc.'s search engine seller-assisted marketing plan delivering the web pages www.scam.com and www.pissedconsumer.com [hereinafter "gripe sites"][2] to computer

_____

[2]A "gripe site" is "a website that allows users to post negative reviews and comments about various businesses." *Amerigas Propane, L.P. v. Opinion Corp.*, Civil Action No. 12-713, 2012 WL 2327788, *7 (E.D. Pa. June 19, 2012). "Pissedconsumer.com" is a gripe site.

3

terminals throughout Alabama as an advertisement driven plan, scheme or system for such services."  (Doc. 1-1 at 6.)    The Complaint contains no allegation or inference that Sonneberg "[bought] goods or services for personal, family or household use" from Google or the gripe sites, as required to qualify as a consumer under ADTPA, Ala. Code § 8-19-3(2).

The Complaint alleges that Google is engaged in a "seller-assisted marketing plan" pursuant to Ala. Code. § 8-19-5(20).  The ADTPA defines a "seller-assisted marketing plan" as "any plan, scheme, or system in which for a consideration a buyer *acquires* goods or services, or both, together with a plan, scheme, or system for the *resale* of said goods or services, or both."  Ala. Code § 8-19-5(20)(emphasis added).  However, the Complaint describes Google as "doing business in Alabama as a computer search engine provider of a seller-assisted marketing plan for the promotion and sale of its services via computer terminals," (doc. 1-1 at 6-7), and Google "has afforded prominent placement in its search engine broadcasting to the [gripe sites] as part of the seller-assisted marketing plan of Defendants for several years," (*id*. at 9).   Plaintiffs' contend:

> The Fictitious Defendants'[ ] banners and content, broadcast via Defendant Google, Inc.'s search engine throughout Alabama, via hundreds of

---

*Id*.; *see also Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 462-63 (E.D.N.Y. 2011). Likewise, "scam.com" appears to be a gripe site.  *See* http://scam.com/ ("This site may contain advice, opinions and statements of various information providers.  Scam.com does not represent or endorse the accuracy or reliability of any advice, opinion, statement or other information provided by any information provider, any User of this Site or any other person or entity.  . . .  Just because a business, person, or entity is listed on scam.com does not necessarily constitute they are scammers.  This is a free open forum where people can debate the merits from the consumer's or business owner's perspective.").

thousands of computer terminals, violated the [ADTPA] by falsely asserting that "American Income Life is a Scam," and Defendant Google, Inc.[,] has knowingly, since delivery of the 15-Day [ADTPA] Letter to Defendant Google. Inc., . . . intentionally disparaged the goods, services, or business of Plaintiff [American Income Life] by false and/or misleading representations of fact prohibited by *Code of Ala*., § 8-19-5(8) and (20).

(*Id*.)  Plaintiffs allege that Google sold advertising to the gripe sites and assisted the gripe sites in achieving prominent placement in search results; this conduct does not constitute a "seller-assisted marketing plan" as defined by the ADTPA.  Nothing in the Complaint alleges that Google sold or offered to sell goods and/or services to plaintiffs together with a plan or system for reselling those goods and/or services – as required to qualify as a seller-assisted marketing plan under the ADTPA.

Plaintiffs contend, "Plaintiff American Income Life Insurance Company is not a scam, and is, in fact, a reputable and upstanding business corporation engaged in the lawful and abov[e]-board business of selling insurance polices."  (Doc. 1-1 at 9.)  The alleged disparaging representation or misrepresentation is the assertion of fact that "American Income Life is a Scam." (*Id*.)  The Complaint does not allege that defendant Google created this alleged statement of fact – only that it broadcast the statement and that it did not remove the statement from its web search results.  (*Id*. at 6-10.)

## II.  <u>DISCUSSION</u>

## A.  MOTION TO RECONSIDER – SUBJECT MATTER JURISDICTION

Plaintiffs ask the court to reconsider the Magistrate Judge's Order denying their Motion to Remand.  Plaintiffs previously objected to this Order and, after review, Judge

Acker affirmed the Order denying plaintiffs' Motion to Remand.  They now ask this court to review, again, the Order denyng their Motion to Remand.

Reconsideration of an interlocutory order is appropriate in three general circumstances: "(1) when a party presents the court with evidence of an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or manifest injustice." *Summit Med. Ctr. of Ala., Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003).  Parties cannot use a motion to reconsider to relitigate old matters, to raise new legal arguments that could have been raised earlier, or to present new evidence that could have been presented earlier. *See Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005); *Sanderlin v. Seminole Tribe of Fla.*, 243 F.3d 1282, 1292 (11th Cir. 2001).  "[A] motion that merely republishes the reasons that had failed to convince the tribunal in the first place gives the tribunal no reason to change its mind." *King v. Farris*, 357 Fed. Appx. 223, 225 (11th Cir. 2009)(quoting *Calle v. United States Attorney General*, 504 F.3d 1324, 1329 (11th Cir. 2007)).[3]

In this case, plaintiffs have not shown any reason to reconsider the Order denying their Motion to Remand.[4]  *See Palmer v. Instrument Transformer, Inc.*, No. 8:14-cv-1069-T-

---

[3]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***." 11th Cir. R. 36-2 (emphasis added).

[4]Plaintiffs contend that they can seek reconsideration of the Magistrate Judge's Order denying their Motion to Remand because the denial was based on an erroneous finding of subject-matter jurisdiction.  Although the court can consider its jurisdiction to act at any time,

33AEP, 2014 WL 2882509, *1 (M.D. Fla. June 25, ,2014);   *United States ex rel. Mastej v. Health Management Associates, Inc.*, 869 F. Supp. 2d 1336, 1349-50 (M.D. Fla. 2012); *Nix v. Fulton Lodge No. 2, Intern. Ass'n of Machinists and Aerospace Workers*, Civil Action Nos. 10463 and 13818, 1970 WL 788, *2 (N.D. Ga. Nov. 16, 1970). Therefore, their Motion to Reconsider will be denied.

Nevertheless, assuming plaintiffs had convinced the court to reconsider the Magistrate Judge's Order denying their Motion to Remand and Judge Acker's Order adopting the Magistrate Judge's Order, the court finds no error. The court rejects plaintiffs' contention that their request for injunctive relief contributes nothing to the calculation of the amount in controversy. (*See* doc. 28 at 5 [citing Ala. Code § 8-19-8(a)].) Section 8-19-10 of the Deceptive Trade Practices Act provides a private right of action to consumers and certain other individuals. This section does not exclude a claim for injunctive relief and, indeed, appears to assume such relief is available in a private cause of action. *See* Ala. Code § 8-19-10(a)(3)(allowing an award of attorneys fees "[i]n the case of any successful action . . . to enforce the foregoing liability or in which ***injunctive relief is obtained***")(emphasis added); *id*. (d)("upon entry of ***any injunction***, judgment, or decree" the clerk of the court "shall mail a copy of such ***injunction***, judgment or decree to the office of the Attorney General and to the local district attorney")(emphasis added). Also, the section of the ADTPA cited by

---

it is only caused to reconsider that jurisdiction upon a showing of something different – new evidence or new law or new argument. *See Harris v. Corrections Corp. of America*, 546 Fed. Appx. 885, 887-88 (11th Cir. 2013)(citing *Michael Linet*, 408 F.3d at 763).

plaintiffs as only allowing the Attorney General or a district attorney to seek injunctive relief, Ala. Code § 8-19-8, does not limit the right to obtain injunctive relief in a private cause of action. *See* Ala. Code § 8-19-8(e)("The court may grant such other appropriate relief as the court may determine.").  Plaintiffs' contentions to the contrary are without merit.

Moreover, plaintiffs' Complaint requests injunctive relief. (Doc. 1-1 at 10-11.) These claims together with plaintiffs' demand for money damages up to, but not to exceed, $75,000, satisfy the jurisdictional amount in controversy. "If [plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938).  This general rule, codified in 28 U.S.C. § 1446(c), has an exception:  "If removal of a civil action is sought on the basis of the jurisdiction conferred by [28 U.S.C.] section 1332(a) [diversity jurisdiction], the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, ***except*** . . . if the initial pleading seeks . . . nonmonetary relief . . . ." 28 U.S.C. § 1446(c)(2)(A)(i)(emphasis added).  In such a case, "removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A)," which includes the amount of money damages demanded in the initial pleading plus the value of nonmonetary relief, "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds [$75,000]." *Id.* (c)(2)(B).  Plaintiffs' argument that the amount in controversy is limited to their demand for less than $75,000, is without merit.

In their Complaint, plaintiffs allege that they suffered "millions of dollars" of damages as a result of defendant's violation of the ADTPA, but they limit their claim for money damages "to less than Seventy Five Thousand [Dollars] ($75,000.00), exclusive of interest and costs." (Doc. 1-1 at 10.) Based on this language, the court deems "the sum demanded in good faith in the initial pleading," 28 U.S.C. § 1447(c), to be $74,999.99. In addition, they request, "[a]fter commencement by the Attorney General or local District Attorney of an action in the name of the State of Alabama against Defendant[ ], an order restraining by way of permanent injunction, their unlawful acts and practices, as provided by Code of Ala. § 8-19-8(a)," and "[a]n order enjoining Defendant[ ] from engaging in business in this state, for continuous and willful violations of the provisions of the Alabama Deceptive Trade Practices Act, until such willful violations cease, as provided by Code of Ala. § [8-19-]8(c)." (Doc. 1-1 at 11.) "In general, to satisfy the jurisdictional amount a plaintiff's claims against a defendant may be aggregated." *SUA Ins. Co. v. Classic Home Builders, L.L.C.*, 751 F. Supp. 2d 1245, 1252 (S.D. Ala. 2010)(citing *Snyder v. Harris*, 394 U.S. 332, 335 (1969)). Therefore, to satisfy the amount in controversy, plaintiffs' requested non-monetary relief must be of some appreciable value to plaintiffs to push the amount in controversy over the $75,000 threshold. *See Salazar v. Tyson Foods, Inc.*, No. 3:12-cv-00093-JEG, 2013 WL 6234584, *4-*5 (S.D. Iowa Jan. 31, 2013)("the Court need only add the value of one month's reinstatement to Salazar['s] stipulated damages of $73,000 for the value of Salazar's claim to exceed the jurisdictional minimum of $75,000")(citing *Gable v. MSC Waterworks Co.,*

9

*Inc.*, No. 12-CV-0047-CVE-PJC, 2012 WL 1118980, *4 (N.D. Okla. Apr. 3, 2012)); *see also JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 369 (4th Cir. 2010)("Consideration of the requested injunctive relief compels the conclusion that Liberty's claim alleges a sufficient amount in controversy.  Even if the $60,456.25 alleged in its summary judgment motion constitutes the sole money damages sought by Liberty, its requested injunctive relief need only have a good faith worth of $14,543.76, i.e. the amount necessary to yield a combined value in excess of $75,000."); *Watts v. Bank of New York Mellon, N.A.*, Civil Action File No. 1:13-CV-2701-TWT, 2014 WL 695222, *2 (N.D. Ga. Feb. 21, 2014)(amount in controversy was "[t]he value of the Property," the foreclosure of which plaintiff sued to prevent, "***plus*** the [money] damages sought")(emphasis added); *Davis Tune, Inc. v. Precision Franchising, LLC.*, No. 3:05CV97/RV, 2005 WL 1204618, *3-*4 (N.D. Fla. May 20, 2005)(amount in controversy was the total of the amount of money damages, limited by a damage waiver, plus the value of non-monetary relief and attorney's fees).

The Eleventh Circuit has "held that '[f]or amount in controversy purposes, the value of injunctive or declaratory relief is the value of the object of the litigation measured from the plaintiff's perspective.'  Stated another way, the value of declaratory relief is 'the monetary value of the benefit that would flow to the plaintiff if the [relief he is seeking] were granted.'" *South Florida Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315-16 (11th Cir. 2014)(quoting *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000)). Plaintiffs allege that they have sustained "millions of dollars" of damages as a result of the

wrongful conduct at issue.  Although they contend that their right to injunctive relief is too speculative, "[t]he larger the calculated amount at stake, the easier it is to be confident that collection contingencies should not count for much."  *South Florida Wellness*, 745 F.3d at 1317(holding that, in a case in which defendant calculated the value to plaintiffs of injunctive relief at $68 million dollars, "[e]ven if we speculated that 90% of that amount would be siphoned off by one contingency or another – an extraordinarily unlikely outcome – more than $6.8 million would still be at stake")(citing *Morrison*, 228 F.3d at 1270-71).

Plaintiffs have alleged that their damages exceed "millions of dollars," but their demand for money damages is limited to "less than $75,000."  The Magistrate Judge held, "In light of plaintiffs' election to forego monetary damages in excess of $75,000, the specific dispute is whether Google has sufficiently established that ***the value of the requested injunctive relief*** more likely than not ***exceeds the $75,000 jurisdictional requirement under 28 U.S.C. § 1332***."  (Doc. 13 at 3.)  However, the court need not decide whether the requested non-monetary relief is worth $75,000 to each plaintiff; the court need only decide that it is worth something to each plaintiff.  Assuming, as plaintiffs' demand, the amount in controversy is $74,999.99, and injunctive relief is worth $1 to plaintiffs, the total amount in controversy is over the $75,000 for each plaintiff.  Given plaintiffs' assertion that they have suffered "millions of dollars" in damages as a result of the conduct they seek to enjoin, the court has no problem finding that the amount in controversy exceeds $75,000.

For the foregoing reasons, plaintiffs' Motion to Reconsider will be denied.

11

**B.  OBJECTIONS TO REPORT AND RECOMMENDATION**

The district court reviews de novo those parts of the Report and Recommendation to which a party objects.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").[5]  The court may review the other parts of the Report and Recommendation for plain error or manifest injustice.  *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983)(citing *Nettles v. Wainwright*, 677 F.2d 404, 410 (11th Cir. 1982)).  "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

Plaintiffs have filed objections to the Magistrate Judge's Report and Recommendation granting defendant's Motion to Dismiss.  For the reasons set forth below, plaintiffs' Objections are **OVERRULED**.

    **1.  The complaint's allegations of fact were not viewed by the magistrate judge "in a light most favorable to Plaintiffs," and his order overlooked "enough facts to state a claim to relief that is plausible on its face," thereby rendering it clearly erroneous and contrary to law.  See *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1958 (2007); *United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 20107).  (Doc. 28 at 7.)**

---

[5]Rule 72(b)(2) requires "*specific* written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2)(emphasis added).  Also, "The district judge must determine de novo any part of the magistrate judge's disposition that has been *properly* objected to."  *Id*. (b)(3) (emphasis added).

"Parties filing objections to a magistrate's report and recommendation must **specifically** identify those findings objected to.  Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)(citing *Nettles v. Wainwright*, 677 F.2d 404, 410 and n.8 (5th Cir. Unit B 1982)). Plaintiffs' conclusory objection to the Report and Recommendation, without any specific reference to any fact overlooked or erroneously construed factual allegation is insufficient to trigger de novo review of the Magistrate Judge's determination of the facts.  Nevertheless, the court has carefully reviewed the Magistrate Judge's statement of facts in light of plaintiffs' Complaint and finds no error.

This objection is **OVERRULED**.  The Magistrate Judge's findings of fact, with the additional facts set forth above, are **ADOPTED**.

**2.    "The record and evidence before the Court establishes that Defendant Google, Inc. is both [an] 'interactive computer service' and an 'information content provider,' robbing it of the immunity it would otherwise enjoy under the Communications Decency Act, 47 U.S.C. Sections 230(c) [and] 230(f)(3)."** (Doc. 28 at 6 [citing, generally, doc. 17].)

The Communications Decency Act [CDA] provides, "No provider or user of an **interactive computer service** shall be treated as the publisher or speaker of any information provided by another **information content provider**."  47 U.S.C. § 230(c)(1).  The CDA defines "internet computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such

13

systems operated or services offered by libraries or educational institutions," *id*. (f)(2); it defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service," *id*. (f)(3). "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with [the CDA]." *Id*. (e)(3). Therefore, Google, to the extent it is not an information content provider for the assertion at issue – American Income Life is a scam – it is immune from plaintiffs' claims based on the ADTPA.

Section 230(c)(1)'s grant of immunity is not without limits, however. It applies only to the extent that an interactive computer service provider is not also the information content provider of the content at issue. An "information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). A website operator can simultaneously act as both a service provider and a content provider. If a website displays content that is created entirely by third parties, then it is only a service provider with respect to that content – and thus is immune from claims predicated on that content. But if a website operator is in part responsible for the creation or development of content, then it is an information content provider as to that content – and is not immune from claims predicated on it. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003)("Under the statutory scheme, an 'interactive computer service' qualifies for immunity so long as it does not also function as an 'information content provider' for the portion of the statement or publication at issue."). Thus, a website may be immune from liability for some of the third-party content it publishes but be subject to liability for the content that it is responsible for as a creator or developer. *See Roommates*, 521 F.3d at 1162-63, 1165; *see also Batzel*, 333 F.3d at 1033. In short, immunity under the CDA depends on the pedigree of the content at issue.

Aware of this limit on § 230 immunity, courts have recognized that § 230 bars a claim if (1) the defendant asserting immunity is an interactive

> computer service provider, (2) the particular information at issue was provided by another information content provider, and (3) the claim seeks to treat the defendant as a publisher or speaker of that information. *See, e.g., Universal Commc'n Sys.*, 478 F.3d at 418. By contrast, a defendant is not entitled to protection from claims based on the publication of information if the defendant is "responsible, in whole or in part, for the creation or development of [the] information." 47 U.S.C. § 230(f)(3).

*Jones v. Dirty World Entertainment Recordings*, 755 F.3d 398, 408-09 (6th Cir. 2014)(footnote omitted). Pursuant to § 230(c)(1), "Google cannot be held liable for search results that yield content created by a third party." *Getachew v. Google, Inc.*, 491 Fed. Appx. 923, 926 (10th Cir. 2012)(citing *Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 984-85 (10th Cir. 2000)).

The Magistrate Judge stated:

> [T]he only allegations in the Complaint about actions taken by Google in support of the conclusory allegation that Google "intentionally disparaged the goods, services, or business of Plaintiff by false and/or misleading representations of fact" are that Google "offer[s] dozens of product and services, including various forms of advertising and web applications," "determine[s] which [web pages] offer 'content of value,'" "assess[es] the importance of every web page," "touts its patented 'Page Rank' algorithm," "analyze[s] which sites are the 'best sources of information across the web' for its seller-assisted marketing plan," "afford[s] prominent placement in its search engine broadcasting to the Fictitious Defendants," and "broadcast[s]" the "fictitious defendants' banners and content." (Doc. 1-1 at ¶¶ 10-13) (emphasis added). After careful review of the Complaint, the court finds that plaintiffs clearly allege that Google is an interactive computer service, but not an information content provider because there are no allegations that Google originated, developed, or modified the disputed content. Instead, the face of the Complaint alleges that Google assesses the value of content across the internet and "broadcasts" the content provided by scam.com and pissedconsumer.com via its search engine. Without allegations that Google ***creates the disputed information***, specifically the alleged false and misleading

representations, plaintiffs' efforts to treat Google as the publisher of those
representations fail under § 230.  *See* [47 U.S.C.] § 230(f)(3).

(Doc. 26 at 6-7 [underline emphasis in original; bold emphasis added].)  Having carefully

reviewed the Complaint as well as the parties' submissions, the court agrees with the

Magistrate Judge and finds that plaintiffs' Complaint fails to allege that defendant Google

***created*** the content that plaintiffs' contend disparages American Income Life.

According to plaintiffs' Complaint the alleged disparaging content are statements

found on the gripe sites, and returned in search results or advertisements, that American

Income Life is a scam.  (Doc. 1-1 at 9, ¶ 13.)  Specifically, plaintiffs contend:

> The [gripe sites's] banners and content, broadcast via Defendant Google, Inc.'s
> search engine throughout Alabama, via hundreds of thousands of computer
> terminals, violates the [ADTPA] by falsely asserting that "American Income
> Life is a Scam," and Defendant Google, Inc. has knowingly, since delivery of
> the 15-Day [ADTPA] Letter to Defendant Google, Inc., dated July 2, 2011,
> attached hereto as Exhibit "A," intentionally disparaged the goods, services,
> or business of Plaintiff by false and/or misleading representations of fact
> prohibited by *Code of Ala.*, § 8-19-5(8) and (20).

(*Id.*)  The Letter, addressed to Google's Vice President and Chief Legal Officer and attached

to plaintiff's Complaint,[6] contends that American Income Life "has fallen prey to a number

of "scam/scam" schemes devised by unscruplous persons who misuse Google's well known

"black box" algorithm for undue search engine placement in connection with designs to

---

[6] When deciding a 12(b)(6) Motion to Dismiss, the court will treat documents attached
to the Complaint as part of the Complaint.  *Reese v. Ellis, Painter, Ratterree & Adams, LLP*,
678 F.3d 1211, 1215-16 (11th Cir. 2012)(citing *Brooks v. Blue Cross & Blue Shield of Fla.,
Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)).

harass and disparage reputable businesses."   (*Id*. at 14.)   The "scam/scam scheme," as plaintiffs describe it,

> works this way:  a person creates a site and targets a reputable company with a good reputation and levels anonymous, untrue and commercially unwarranted posting against it, pretending to serve [as] a "whistleblower" public service.  They allege a "scam" that is not a "scam" (hence the term "scam/scam").  These individuals than manipulate your "blackbox" algorithm to assure high placement for search engine research purposes when a job applicant at the targeted company seeks information about it.

(*Id*.)  This opening salvo also states that plaintiffs "have no doubt that Google's complicity in these schemes has been unwitting (at least to the point of receipt of this letter)."   (*Id*. at 15.)  The Complaint contains no allegation that Google created any content that represented American Income Life as a scam.  Although the gripe sites's content was broadcast and/or returned as a result of keyword searches of "American Income Life" on Google's website, the Complaint does not allege that Google created or otherwise developed any content stating that American Income Life is a scam.

The Magistrate Judge's Recommendation that plaintiffs' Complaint be dismissed based on Google's immunity as an internet service provider is **ACCEPTED** and plaintiffs' Objection is **OVERRULED**.  Plaintiffs' Complaint will be dismissed.

17

**3.   The record and evidence before the Court regarding the Alabama Deceptive Trade Practices Act, *Code of Ala.*, §§ 8-19-3(5), 8-19-5, 8-19-10(a) and 8-19-15, and the effect of the appearance of the District Attorney for Jefferson County in this action, were construed by the magistrate judge in a manner that was clearly erroneous and contrary to law.**   (Doc. 28 at 6-7 [citing, generally, doc. 17].)

Plaintiffs have not specified what portions of the Report and Recommendation to which they object or exactly why they believe the Magistrate Judge erred.  The court notes that the District Attorney for Jefferson County (Bessemer Division) filed an Entry of Appearance in state court, which indicated he was conducting a preliminary investigation into plaintiffs' claims.  (Doc. 4-1 at 2-3.)  However, the record contains no evidence of any further action by the District Attorney.  The Report and Recommendation states:

> Lastly, the court finds no merit to plaintiffs' contention that the initiation by the District Attorney for the Bessemer Division of Jefferson County of a preliminary investigation into plaintiffs' allegations permits them to maintain this action against Google despite Google's § 230(c) immunity. The court recognizes that § 230(e) provides that "[n]othing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section."  [47 U.S.C. § 230(e).]  However, because ***the District Attorney is not a party to this action***, dismissing plaintiffs' case would not prevent the State from enforcing any state laws.  Further, although plaintiffs note that none of the cases Google relies upon involved the ADTPA, plaintiffs have shown no authority indicating that the ADTPA is entitled to any differential treatment than tort claims in applying § 230 immunity.  Indeed, § 230(e)(3) provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with the section."  *See also Doe v. SexSearch*, 502 F. Supp. 2d 719, 726-28 (N.D. Ohio 2007).

(Doc. 26 at 8-9 [emphasis added].)

The Magistrate Judge's Report and Recommendation recommends dismissing plaintiffs' claims against defendant Google.  For the reasons set forth above, the court

**ADOPTS** this Recommendation.  The limited appearance by the District Attorney for Jefferson County (Bessemer Division) has no effect on Google's immunity as to plaintiffs' ADTPA claims, and dismissal of these claims has no preclusive effect on any claim the District Attorney may have against Google and/or the gripe sites.  Plaintiffs' Objection has not pointed to any specific error in the Magistrate Judge's Report and Recommendation and this court does not discern any error in the Magistrate Judge's decision that the limited appearance of the District Attorney has no effect on the dismissal of plaintiffs' claims.

Plaintiffs' Objection is **OVERRULED**.  The Recommendation is **ACCEPTED**.

**4.  Plaintiffs' Complaint does not state a claim against defendant based on the ADTPA.**

The court notes, even assuming defendant was not entitled to immunity, plaintiffs' Complaint does not state a claim for relief under the ADTPA.  Plaintiffs' Complaint alleges that defendant violated two provisions of the Act:  Ala. Code § 8-19-5(8) and (20).  These provisions make unlawful "[d]isparaging the goods, services, or business of another by false or misleading representations of fact," and,

> [i]n connection with any seller-assisted marketing plan, either misrepresenting the amount or extent of earnings to result therefrom, or misrepresenting the extent or nature of the market for the goods or services, or both, sold or delivered in connection with the plan, or misrepresenting that the seller of the plan will repurchase all or part of the goods or services, or both, sold or delivered in connection with the plan, or failing to deliver goods or services, or both, within the time represented."

Ala. Code § 8-19-5(8) and (20).  The phrase "seller-assisted marketing plan" is defined as "includ[ing] any plan, scheme, or system in which for a consideration a buyer acquires goods or services, or both, together with a plan, scheme, or system for the resale of said goods or services, or both."  Pursuant to Ala. Code § 8-19-10(a), except as to subsections (19), prohibiting pyramid schemes, and (20), regarding seller-assisted marketing plans, a defendant is liable for damage to a consumer, which are defined as "[a]ny natural person who buys goods or services for personal, family or household use," Ala. Code § 8-19-3(2).  For claims under subsections (19) and (20) a defendant may be liable to any person, including a corporation.  Ala. Code § 8-19-10(a).  However, a person injured by a pyramid scheme, § 8-19-5(19), or a misrepresentation related to a seller-assisted marketing plan, § 8-19-5(20), must be a party to the pyramid scheme or the buyer of a seller-assisted marketing plan.

Clearly, plaintiffs do not have claims under the Alabama Deceptive Trade Practices Act against Google based on the prominent placement of the gripe sites in search results. Neither plaintiff alleges that he/it purchased goods or services for purposes of reselling those goods or services through a plan, scheme, or system provided by defendant.  A "seller-assisted marketing plan" is not the sell of advertisements or activity designed to maximize the results of that advertisement – such as creating prominent placement of search results. Therefore, assuming that Google assisted the gripe sites in achieving prominent placement in its search results, such activity does not violate the "seller-assisted marketing plan" provision of the ADTPA.

Also, the Complaint contains no allegations in support of plaintiffs' claim that Sonneberg is a consumer for purposes of Ala. Code § 8-19-5(8).  The Complaint alleges that Sonneberg, "the Alabama State General Agent for Plaintiff American Income Life Insurance Company," is a "consumer."  (Doc. 1-1 at 6.)  Under the ADTPA, a "consumer"  is "[a]ny natural person who buys goods or services for personal, family or household use."  Ala. Code § 8-19-3(2).  The Complaint contains no allegations from which it can be inferred that Sonneberg was injured as a "consumer"; his alleged injuries appear to arise in his capacity as an agent of American Life.   Nothing in the Complaint supports an inference that Sonneberg bought any goods or services from Google related to the gripe sites for his personal use, his family, or his household.  Without some indication that Sonneberg is an injured ***consumer***, his claim under the ADTPA cannot proceed.

Therefore, even assuming defendant Google was not entitled to immunity under the CDA, plaintiffs' Complaint fails to state a claim for relief under the ADTPA.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that plaintiffs' Motion to Reconsider is due to be denied and their Objections are due to be overruled.  The Magistrate Judge's Report is due to be adopted and his Recommendation will be accepted.  Defendant's Motion to Dismiss, (doc. 5), will be granted; and plaintiffs' Complaint will be dismissed with prejudice.

**DONE** this 8th day of September, 2014.

SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE